IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

BRENETTE VAUGHN                                                                    PLAINTIFF

V.                                                       CIVIL ACTION NO. 1:15CV174-SA-DAS

STARKVILLE MANOR
HEALTHCARE, LLC                                                                    DEFENDANT

MEMORANDUM OPINION

This matter arises from Plaintiff's claims under Title VII and 42 U.S.C. Section 1981. Defendant filed its Motion for Summary Judgment [45]. Plaintiff responded [51] and Defendant replied [55].

*Factual and Procedural Background*

Vaughn was employed by Starkville Manor as a Certified Nursing Assistant ("CNA"). On September 2, 2014, upon realizing that she was severely shorthanded, Vaughn's supervisor, Vickie Collins called Vaughn in to work an unscheduled night shift. Typically, an overnight shift would have begun at 10:00 p.m. and ended at 6:00 a.m., but because Collins called Vaughn in around 12:00 a.m., her shift was two hours short. Vaughn, who was reluctant to come in for a late shift, agreed to work on the basis that she would be paid for an entire shift of eight hours instead of the six hours she actually worked. Vaughn arrived at the facility after midnight and worked until 6:00 a.m.

Pursuant to the agreement that she had with Collins, Vaughn filled out and submitted a time management adjustment form, stating that she had worked from 10:00 until 6:00. Collins signed the time adjustment form and showed general appreciation for Vaughn's effort in relieving her. Unfortunately, the agreement had not been sanctioned by the Human Resources representative, Derek Cole or the Administrator, Christina Palmer. Therefore, on September 3,

2014, Vaughn was reprimanded for "stealing time." Vaughn was ultimately suspended and later fired for "falsification of a time clock," but she refused to sign the write-up, denying that she had done anything wrong.

Vaughn asserts that it was customary for employees to be paid for the entire shift when they were called in for such emergencies, though the request had to be signed off by a supervisor. Vaughn alleges that she was fired because she is African American, and not because of her supposed violation of work rules. She points to other individuals whom she claims were treated more favorably because they are white.

After her termination, Vaughn applied for unemployment benefits with the Mississippi Department of Employment Security and was originally denied. After appealing the decision, a hearing was held wherein the Administrative Law Judge ("ALJ") found that there was no falsification by Vaughn, and that true fault lay with the supervisor's improper approval of an agreement that she did not have the authority to provide. Vaughn filed an EEOC charge, and received a right to sue letter. She brought this action, seeking relief under Title VII and 42 U.S.C. Section 1981.

*Summary Judgment Standard*

Federal Rule of Civil Procedure 56 governs summary judgment. Summary judgment is warranted when the evidence reveals no genuine dispute regarding any material fact, and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). The Rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323, 106 S. Ct. 2548. The nonmoving party must then "go beyond the pleadings" and "designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324, 106 S. Ct. 2548 (citation omitted). In reviewing the evidence, factual controversies are to be resolved in favor of the non-movant, "but only when ... both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). When such contradictory facts exist, the Court may "not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000). Conclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments are not an adequate substitute for specific facts showing a genuine issue for trial. *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002); *SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1997); *Little*, 37 F.3d at 1075.

*Analysis and Discussion*

To succeed on a claim for racial discrimination under Title VII and Section 1981,[1] a plaintiff may show a *prima facie* case either through direct evidence of discriminatory motive, or circumstantial evidence under the *McDonnell Douglas* burden-shifting framework. *Lee v. Conecuh Cty. Bd. of Ed.*, 634 F. 2d 959, 961–62 (5th Cir. 1981); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973). To show a *prima facie* case, a plaintiff must first establish that she (1) is a member of a protected class, (2) suffered an adverse employment action, (3) was qualified for the position, and (4) was replaced by someone

---

[1]The analyses under both statutes are identical, *Raggs v. Mississippi Power & Light Co.*, 278 F.3d 463, 468 (5th Cir. 2002); *see also Jones v. Robinson Prop. Grp., L.P.*, 427 F.3d 987, 992 (5th Cir. 2005).

outside of the protected class or that similarly situated employees of a different race were treated more favorably. *Turner v. Baylor Richardson Med. Ctr.*, 476 F. 3d 337, 345 (5th Cir. 2007).

If a plaintiff establishes a presumption of discrimination by establishing a *prima facie* case, the burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for its actions. *Reeves*, 530 U.S. at 142, 120 S. Ct. 2097; *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254–56, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981). The burden on the employer "is one of production, not persuasion; it 'can involve no credibility assessment.'" *Reeves*, 530 U.S. at 142, 120 S. Ct. 2097 (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 509, 113 S. Ct. 2742, 125 L. Ed. 2d 407 (1993)).

If the employer sustains its burden, the *prima facie* case is dissolved, and a plaintiff asserting discrimination must establish either: (1) that the employer's proffered reason is not true but is instead a pretext for discrimination; or (2) that the employer's reason, while true, is not the only reason for its conduct, and another "motivating factor" is the plaintiff's protected characteristic. *Alvarado v. Texas Rangers*, 492 F.3d 605, 611 (5th Cir. 2007) (citing *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004)).

As Plaintiff lacks direct evidence of discrimination in the case at bar, she must assert her claim using the *prima facie* case. Plaintiff alleges that she is a qualified member of a protected class who suffered an adverse employment decision. Furthermore, she believes that she was treated less favorably than employees outside of the class who violated the same work rule. "In work rule violation cases, a Title VII plaintiff may establish a *prima facie* case by showing 'either that he did not violate the rule or that, if he did, white employees who engaged in similar acts were not punished similarly.'" *Mayberry v. Vought Aircraft Co*., 55 F.3d 1086, 1090 (5th Cir. 1995). Plaintiff alleges the latter point.

Plaintiff points to Penney Thompson and Amber Kincaid, who were also CNAs working for Starkville Manor. Both were terminated for "stealing time" prior to Vaughn's termination. However, Vaughn argues that even though she was fired upon her first infraction for this offense, Thompson and Kincaid, who are white, were given a warning first. As evidence for such occurrence, Plaintiff points to Cole's witness statement regarding Thompson and Kincaid. Cole wrote that "this was both of their second occurrence," and "this was her second warning for leaving the job while on the clock." Plaintiff also alleges that there were rumors at the facility that they had been caught at a restaurant by their supervisor concurrent with the first violation. Finally, Plaintiff, as union steward, had a conversation with Cole about their termination. Plaintiff alleges that during this conversation, Cole mentioned Thompson and Kincaid's first violation in passing. However, Defendant alleges that the first violation was a different kind of violation, making the situations unequal.

Starkville Manor argues that Thompson never received any type of discipline for stealing time prior to the incident that led to her termination, though she once came back from lunch late. Starkville Manor alleges that such rule violation is categorically different, however, because Thompson was not clocked in for time she was not working, but merely returned late. Therefore, her first infraction was not for stealing time. Kincaid similarly testified that prior to the incident that led to her termination, she had never been accused of stealing time or disciplined for stealing time. Like Thompson, Kincaid's prior incidents involved her staying on her lunch break beyond her thirty minute lunch allotment, but she also violated the cell-phone policy.

In any event, after Thompson and Kincaid's termination, Plaintiff and other employees were required to review and sign a notice of Starkville Manor's timekeeping policies, stating that she must "[n]ever falsify my time records or those of another employee." Starkville Manor

5

argues that after this incident, there was a general crackdown on time management policies, and Vaughn should have known that the rules had become more strict.

Furthermore, Defendant alleges that they had a system for warnings involving levels of offense. Defendant asserts that a "level two" disciplinary action can warrant termination. They allege that prior to her last offense, Plaintiff received a "level one" verbal warning for talking to other employees while in a patient's room. She then received a "level two" written action for allowing a patient to fall because she failed to secure the patient in his shower chair. The offense for which she was terminated, stealing time, also warrants a "level two" disciplinary action, and it was her third infraction within the pertinent time limit. Therefore, upon termination, Plaintiff had received two "level two" write-ups and one "level one."

The Fifth Circuit has repeatedly held that "critically, the plaintiff's conduct that drew the adverse employment decision must have been 'nearly identical' to that of the proffered comparator who allegedly drew dissimilar employment decisions." *Lee v. Kansas City Southern Ry. Co.*, 574 F.3d 253, 259-61 (5th Cir. 2009). Defendants argue that Plaintiff fails to meet the *prima facie* burden because there is not enough evidence to create a question of material fact as to whether the previous incident involving Thompson and Kincaid was nearly identical to the incident which resulted in Plaintiff's termination. Indeed, deposition testimony shows that the two CNAs were reprimanded for returning from lunch late, but were not clocked in and not accused of stealing time. Defendant argues that, though Cole did state that "this was both of their second occurrence," he testified that he merely meant "occurrence" to mean infraction, not specifically their second violation for stealing time. Upon being caught for stealing time, the two were terminated. Defendant also points to the differences in the occasion wherein the different parties were punished for this violation.

6

For example, after Plaintiff was reprimanded for the violation, she did not dispute whether she had broken the rules, but rather attempted to explain why it was excusable. However, Thompson and Kincaid never admitted to breaking any rules, and therefore, Starkville Manor lacked any proof that they had violated. Furthermore, whereas Plaintiff's time sheet had been manipulated to reflect a difference in hours worked versus recorded time, Starkville Manor lacked such evidence regarding any supposed prior occasion involving Thompson and Kincaid, because their violation was different. Next, Plaintiff was terminated after Thompson and Kincaid, and therefore had been recently warned about the severity of offenses related to clock-in procedures, even signing an affidavit to that effect. Finally, Plaintiff alleges that Thompson and Kincaid left their workstation while on the clock, but were not terminated for this offense. Defendant urges that this behavior, if it actually occurred, is much different than intentionally falsifying a time document. Indeed, "[i]f the 'difference between the plaintiff's conduct and that of those alleged to be similarly situated *accounts for* the difference in treatment received from the employer,' the employees are not similarly situated for the purposes of an employment discrimination analysis." *Lee*, 574 F.3d at 260 (quoting *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 221 (5th Cir. 2001) (emphasis added).

The Court notes that all parties were terminated for committing a "level two" offense. Plaintiff had previously received a "level two" write-up, even though it was not a write-up for stealing time. Therefore, even if Thompson and Kincaid had committed another "level two" offense prior to the terminable offense, their treatment would be substantially similar to Plaintiff's in that they were both allowed two "level two" write-ups before termination. Also, even if the other CNAs received prior warning, which put them on notice that violating clock-in

7

policy was a terminable offense, Plaintiff was equally on notice that such violations would no longer be permitted because she signed an affidavit stating such.

Even if Plaintiff could present a *prima facie* case, she must also overcome Defendant's assertion of legitimate, nondiscriminatory reasons for termination. *Alvarado*, 492 F.3d at 611. Defendant alleges that Plaintiff had eight previous written warnings for disciplinary issues. Even though such disciplinary write-ups "roll off" after one year, the issues created a history of problems within the workplace. As noted, within the year of her termination, Plaintiff had received two other disciplinary warnings, one of which was a terminable "level two" offense. Defendants also argue that beginning with Thompson and Kincaid's termination, Plaintiff was on notice that the previous habit of changing time sheets was no longer appropriate, but she chose to violate the rules anyway. Therefore, Defendant argues that they were justified in firing Plaintiff. Defendant also argues that even if the termination might be deemed unfair due to Supervisor Collins' mistake, such unfairness was not discriminatory.

Thus the burden shifts back to Plaintiff to establish that these reasons were mere pretext. A plaintiff may establish pretext either through evidence of disparate treatment or by showing that the employer's proffered explanation is false or "unworthy of credence." *Wallace*, 271 F.3d at 220; *Reeves*, 530 U.S. at 143, 120 S. Ct. at 2106. "Evidence demonstrating that the employer's explanation is false or unworthy of credence, taken together with the plaintiff's *prima facie* case, is likely to support an inference of discrimination even without further evidence of defendant's true motive." *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 897 (5th Cir. 2002); *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 222 (5th Cir. 2000). In contrast to the minimal burden that a plaintiff bears when establishing his *prima facie* case, a plaintiff must produce "substantial evidence of pretext."*Auguster v. Vermilion Par. Sch. Bd.*, 249 F.3d 400, 402–03 (5th Cir. 2001)).

To establish that Defendant's justification was pretext for discrimination, and that she was subjected to disparate treatment, Plaintiff relies on her *prima facie* case, as well as her supervisor's approval of her behavior. Also, Plaintiff argues that Defendants are collaterally estopped from alleging that Plaintiff stole time, because the ALJ determined that there was "no falsification by the claimant" during the MDES hearing. However, the ALJ was not attempting to determine whether Defendant discriminated against Plaintiff, but rather, whether she should receive benefits. Therefore, collateral estoppel does not apply. Furthermore, because the other white employees were not similarly situated, Plaintiff has not established a *prima facie* case. Even if Plaintiff had established a *prima facie* case, the Court's inquiry is not whether an employer made an erroneous decision; it is whether the decision was made with discriminatory motive. *See Mayberry*, 55 F.3d at 1091.

> "[E]ven an incorrect belief that an employee's performance is inadequate constitutes a legitimate, nondiscriminatory reason. We do not try in court the validity of good faith beliefs as to an employee's competence. Motive is the issue . . . . [A] dispute in the evidence concerning . . . job performance does not provide a sufficient basis for a reasonable factfinder to infer that [the] proffered justification is unworthy of credence."

*Little*, 924 F.2d at 97. *See also Sherrod v. Sears Roebuck & Co.*, 785 F.2d 1312 (5th Cir. 1986); *Jones v. Gerwens*, 874 F.2d 1534, 1540 (11th Cir. 1989). Plaintiff's assertion that her supervisor is the person truly at fault for improperly approving her timesheet does not show that Starkville Manor discriminated against her.

Finally, Plaintiff has failed to argue that the explanations given by Defendant are unworthy of credence. Indeed, she does not dispute her repetitive violations of employee policies, including her history of written warnings, or the fact that she knowingly changed her written clock-in sheet to reflect hours that she did not work. She also fails to argue that the employer's reason, while true, is not the only reason for its conduct, and another "motivating

9

factor" is the plaintiff's race. *Alvarado*, 492 F.3d at 611 (citing *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004)). Other than speculation and her own subjective belief that Defendant's decision was discriminatory, Plaintiff does not point to any summary judgment evidence, let alone "substantial evidence," that race had anything to do with her termination. *See Auguster*, 249 F.3d at 403.

*Conclusion*

Therefore, Plaintiff has not presented a genuine issue of material fact as to whether she was discriminated against in her workplace. Likewise, her claims under Section 1981 fail, as well. Defendant's Motion for Summary Judgment is GRANTED. Plaintiff's claims are dismissed. This case is CLOSED.

IT IS SO ORDERED, this 14th day of March, 2017.

    /s/ Sharion Aycock
UNITED STATES DISTRICT JUDGE